JOSEPH P. RUSSONIELLO (CABN 44332)
United States Attorney

BRIAN J. STRETCH (CABN 163973)
Chief, Criminal Division

STEPHEN G. CORRIGAN (MABN 100560)
Assistant United States Attorney
   1301 Clay Street, Suite 340S
   Oakland, CA 94612
   Telephone: (510) 637-3680
   Fax: (510) 637-3724
   E-Mail: stephen.corrigan@usdoj.gov

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | No. CR 09-00755 DLJ |
| ) Plaintiff, ) | UNITED STATES' SENTENCING MEMORANDUM |
| ) v. ) | Date: July 30, 2010 |
| ) PETER SON, ) | Time: 10:00 a.m. |
| ) Defendant. ) | |

**I. INTRODUCTION**

Defendant Peter C. Son is scheduled to be sentenced on July 30, 2010 for his guilty pleas to conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349, and conspiracy to engage in monetary transactions with the proceeds of wire fraud in violation of 18 U.S.C. § 1956(h). For the reasons stated below, the government recommends a sentence of 188 months in custody, 3 years supervised release, restitution in the amount of $62,192,828.55, and a special assessment of $200.

## II. BACKGROUND

Defendant Peter Son and his business partner Jin Chung were the owners of SNC Asset Management, Inc. and SNC Investments, Inc. The companies were started in 2003 and shared office space in Pleasanton, California, and had another office located on Wall Street, New York, New York. Son served as the Chief Executive Officer and Chung served as the Chief Financial Officer. They had a small staff of several employees. .

SNC Assets was advertised as a company established for clients who wanted the company to conduct foreign exchange trading on their behalf, or wanted to use the business as a secure investment, receiving a set return each month. Customers who wanted a fixed return were informed they would receive between 2% to 3% per month, which amounts to returns of 24% to 36% a year. Cash customers received their profits or the return of their principle either in cash or from checks drawn on Son's or Chung's personal checking account. SNC Investments was established to allow customers to conduct their own foreign exchange trading through the business.

Beside the incredible annual return rates advertised and promoted, Son and Chung encouraged customers to invest their funds in the companies by falsely advertising that the companies were very successful in the foreign exchange market. In fact, the records reflect that neither company conducted much foreign exchange trading. Based upon their false advertisements, between 2003 and October 2008, the businesses took in approximately $85 million, $37 million in cash, from approximately 500 investors, most of whom were Korean, living in California and in Korea.

Son and Chung deposited customers' funds into a SNC Bank of America business account. Son and Chung controlled this account, writing checks and transferring funds from the account to pay purported investment returns and redemptions to investors, and to pay their own personal expenses. For example, from this account, Son paid his monthly mortgage payments of $8,593 for his home in Blackhawk, monthly payments of $495 for Blackhawk association dues, various amounts for Blackhawk Country Club dues, and paid his wife $3,000 in a monthly salary despite

the fact that she was not employed by the companies.

From the beginning, investors were strongly encouraged to reinvest there profits to avoid having to return funds to the customers.  Returns were paid out to only those investors who demanded that the accounts be closed or those who demanded monthly returns be paid instead of reinvested.

Over the last year of the business, Son and Chung aggressively solicited customers to invest additional funds, giving no notice of the intent to close the business and no warning that the funds would not be returned to the customers.  Between October 2007 and October 2008, customers deposited approximately $22 million into the SNC bank account, of which approximately $13.3 million were check deposits.  Between August 25, 2008 and September 22, 2008, Son transferred $1,590,000 from the SNC bank account to Son's personal Bank of America account.  In August and September 2008, just prior to the closing of the business at the end of October, Son wire transferred $1 million dollars from his personal account.

In October 2008, without any advance warning to employees or customers, Son and Chung failed to report to work.  Chung remained in Korea, where he had gone on a business trip, and Son failed to report to the SNC Pleasanton, California office.  Son remained in hiding until June 8, 2009, when he self-surrendered.

### III. GUIDELINES CALCULATIONS

The Presentence Investigation Report (PSR) accurately reflects a Guidelines calculation resulting in an offense level 36, and a range of 188 to 235 months in custody.  The defendant plead guilty under the terms of written plea agreement that calculated the guidelines for the conspiracy to commit wire fraud and did not include a two-level increase for the conviction of 18 U.S.C. § 1956(h), resulting in an offense 34 and a guidelines range of 151-188.

**A.  Plea Agreement**

Son's written plea agreement contained Guidelines calculations different from those in the PSR.  For the plea of guilty to count one, conspiracy to commit wire fraud, the parties agreed that the adjusted offense level was either 34 or 36, dependent on whether the loss amount was

UNITED STATES' SENTENCING MEMORANDUM
CR 09-00755 DLJ

3

calculated at more than $20 million or more than $50 million.

| | | |
|---|---|---|
| Base offense level, USSG §2B1.1(A) | | 7 |
| Loss of more than $20 million , or more than | | |
| $50 million, §2B1.1(b)(1)(L) or (M) | | +22 or +24 |
| 250 or more victims, §2B1.1(b)(2)(C) | | +6 |
| Early acceptance | | -3 |
| Adjusted offense level | | 32 or 34 |

See Plea agreement at ¶ 7.

The agreement does not include a separate calculation for the conspiracy to engage in money laundering, nor does the agreement include a two-level increase for Son's conviction of 18 U.S.C. § 1956(h). U.S.S.G. § 2S1.1(b)(2)(B). Based upon the loss calculation of more than $62 million, as reflected in the PSR and not disputed by the defense, the Guidelines calculations contained in the plea agreement establishes a resulting offense level 34. The defendant has no criminal history.

**B. Presentence Report**

The PSR Guidelines calculations result in an offense level 36, which includes the following:

Count One, Conspiracy to commit wire fraud

| | | |
|---|---|---|
| Base offense level, USSG §2B1.1(A) | | 7 |
| Loss of more than $50,000,000, §2B1.1(b)(1)(M) | | +24 |
| 250 or more victims, §2B1.1(b)(2)(C) | | +6 |
| Adjusted offense level | | 37 |

See PSR at ¶¶ 20-26.

Count Two - Conspiracy to engage in monetary transactions with proceeds of conspiracy to commit wire fraud

| | | |
|---|---|---|
| Base offense level, USSG §2B1.1(A) | | 7 |
| Loss of more than $50,000,000, §2B1.1(b)(1)(M) | | +24 |
| 250 or more victims, §2B1.1(b)(2)(C) | | +6 |

    Conviction for 18 U.S.C. § 1956(h), USSG §2S1.1(b)(2)(B)  +2

    Adjusted offense level                                                                 39

See PSR at ¶¶ 27-32.

There is no adjustment for multiple counts, and Son is credited with early acceptance of responsibility, reducing the highest adjusted offense level 39 to 36.  PSR at ¶¶ 33-39.

## IV.  18 U.S.C.§ 3553 FACTORS

The factors set forth in 18 U.S.C. §3553(a) support a sentence of 188 months, which is either the high end of offense level 34 (151-188), or the low end of offense level 36 (188-235). Son and his partner, Jin Chung, established a fraudulent scheme over a period of five years resulting in losses of more than $62 million to 500 victims.  The customers' investments were used to pay Son's personal expenses.  According to Son and Chung, when he was called by an SNC employee following the closure of the SNC offices in October 2008, all of the investors' funds are gone.  Because the funds have not been recovered, there is little likelihood that the victims will receive restitution and thus will be unable to recover their losses.  Considering the magnitude of the offense and the devastating losses incurred, a sentence of 188 months is appropriate.

### 1. Nature and Circumstances of the Offenses

Pursuant to 18 U.S.C. § 3553(a)(1), the Court should consider "the nature and circumstances of the offense" in rendering the sentence.  For more than five years, Son and Chung preyed upon their SNC customers, ending with the defendants depleting the company's bank accounts and absconding, without any advance notice to SNC employees or clients.  Unlike other fraud offenses that may have begun with good intent and turned fraudulent when the business plan failed, there is no evidence that Son and Chung started SNC Assets or SNC Investments with a legitimate business plan.  From the beginning, Son and Chung relied on intentionally false to convince customers to invest.  Contrary to the advertisements, SNA assets did not have a proven track record that was so successful they could contract with customers to pay returns of 24% to 36% a year.  In fact, neither SNA Assets nor SNC Investments was actively involved in large-

scale foreign exchange trading.

Son and Chung knew that if they promised return rates that far exceeded market rates, customers would invest. Son and Chung continued the charade, sending customers monthly reports to customers outlining monthly profits from their investments. Since little or no foreign exchange trading occurred, and neither SNC Assets nor SNC Investments was involved in any other money making venture, Son and Chung knew from the beginning that it was impossible to pay the returns advertised. Instead, to keep the scheme alive, Son and Chung knew they had to take in more money than they paid out.

In sum, Son and Chung created the classic Ponzi scheme, paying off early investors when necessary while continuing to generate income through false advertising. Thus, from the start it appears that Son and Chung were motivated to engage in criminal conduct for their own selfish benefits, without any concern for the impact on others.

### 2. Respect for the Law

Pursuant to 18 U.S.C. § 3553(2)(A), the Court should also evaluate the defendant's sentence in terms of how it "promote[s] respect for the law." Son has no criminal history, but carried on the fraud for five years depleting the investments of more than 500 victims who lost more than $62 million. The sheer magnitude and callousness of the crime and the resulting impact on the lives of the victims, some who have lost their lives savings and others who have been forced to return to work, calls for a commensurately serious sentence. A sentence of 188 months is necessary and appropriate given the seriousness of offense, to promote respect for the law, and to provide just punishment.

### 3. Deterrence

Large-scale white collar fraud appears to be a growing phenomenon. Yet the sentences imposed are typically significantly lower than sentences imposed for other crimes, such as drug offenses, which are often committed by disadvantaged defendants. While the effects of drug trafficking are well-documented, in that society suffers from the ravages of drug dependency and the associated violence, the devastation of white collar fraud offenses is personal; the victims are

UNITED STATES' SENTENCING MEMORANDUM
CR 09-00755 DLJ

individuals who place their trust, and their investments, in the hands of others. Since the motivation for fraud offense is typically greed, not need, long-term prison sentences hopefully will serve as a deterrent, not only to the sentenced defendant, but to others contemplating fraudulent conduct.

## V. GOVERNMENT'S RECOMMENDATION

The government does not believe that there is any legitimate basis for a sentence below 188 months. Although Son has no criminal history, the magnitude of the crime requires the recommended sentence. The victims have established a loss of more than $62 million, yet Son reports that all the money is gone. The devastating impact that Son and Chung have caused the victims is documented in the many victim impact statements submitted to the Court. As a result of Son's offenses, victims report they have lost their life savings, college savings for their children, and retirement funds. Victims have had to file for bankruptcy and others have had to return to work. Additionally, the victims uniformly report an emotional impact, including a general lack of trust of others, difficulty sleeping, depression, and anger. Although the victims are unlikely to regain their financial losses, a sentence worthy of the crimes will assist them in moving forward with their lives. Accordingly, the government recommends a sentence of 188 months imprisonment, a term of supervised release of 3 years, restitution in the amount of $62,192.828.55, and a special assessment of $200.

DATED: July 27, 2010          Respectfully submitted,

JOSEPH P. RUSSONIELLO
United States Attorney


                /s/
STEPHEN G. CORRIGAN
Assistant United States Attorney

UNITED STATES' SENTENCING MEMORANDUM
CR 09-00755 DLJ

7